## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JUDY BOWEN,

        Plaintiff,

vs.                                  No. CIV 02-566 MV/LAM

GRANTS/CIBOLA COUNTY SCHOOLS,
GRANTS/CIBOLA COUNTY SCHOOL
BOARD, JOHN BRYANT and MITZI
BACA,

        Defendants.


### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss **[Doc. No. 11]** Plaintiff's Complaint and Memorandum in support thereof **[Doc. No. 12]**, filed July 23, 2002. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion will be **DENIED in part** and **GRANTED in part**.

### BACKGROUND

Plaintiff Judy Bowen was employed as Technology Coordinator for Grants/Cibola County Schools from October 1999 through March 2002. As Technology Coordinator, Ms. Bowen was responsible for procuring office equipment and computer services by receiving and awarding bids from contractors. Ms. Bowen's immediate supervisor was the superintendent of the school district.

In May 2001, Ms. Bowen received a letter of intent to rehire her for the 2001-2002 academic year, even though the Grants/Cibola County School Board (School Board) had not then approved the contract or pay schedule. In September 2001, the School Board authorized a pay

schedule under which Ms. Bowen and three other white employees had their pay frozen while all other employees were given a pay raise.  When Ms. Bowen asked the School Board why her salary remained the same, she was given no explanation.

Also in September 2001, an audit was conducted of the school district.  Mitzi Baca, a member of the School Board, requested that the auditors take particular note of any dealings between Ms. Bowen and Optima Systems, Inc., (OSI) a contractor that had engaged in business with the school district even before Ms. Bowen had been hired as Technology Coordinator.  Ms. Baca stated that she believed Ms. Bowen was receiving kickbacks from OSI.  In their November 2001 exit interview, the auditors concluded that there was no indication of impropriety between Bowen and OSI.  Nevertheless, Ms. Baca restated her allegation that Ms. Bowen had received payoffs from OSI in a November 2001 public hearing and demanded a copy of the auditor's report.  Ms. Baca repeated her accusations of misconduct in February 2002 during an open meeting of the School Board at which Ms. Bowen was giving a presentation about funding for technology matters.

Some time in February 2002, Ms. Bowen filed a complaint with the EEOC alleging race-based discrimination.

On or about March 19, 2002, the School Board held a meeting to review and approve contracts for the upcoming academic year.  According to Ms. Bowen's Complaint, packets distributed for this meeting contained a list of individuals recommended for rehiring and Ms. Bowen's name was included in this list.  However, before the meeting began, a new recommended rehire list was disseminated, from which Ms. Bowen's name had been eliminated.  When Ms. Bowen asked why she had been removed, then-acting superintendent John Bryant stated only that

the School Board had, during an executive session, decided to remove her name from the list. However, Ms. Bowen contends that no such executive session occurred prior to the revision of the list.

Ms. Bowen further alleges that, in March 2002, John Bryant requested another teacher to prepare a review on technology in the district without Bowen's knowledge or input, even though this was a task typically done by Ms. Bowen as Technology Coordinator.

On or about March 25, 2002, Ms. Bowen submitted a letter of resignation to her supervisor, because her name had been removed from the recommended rehire list for the 2002-2003 academic year and because her position as Technology Coordinator had been eliminated.

On May 20, 2002, Ms. Bowen brought the instant lawsuit against the Grants/Cibola County School Board, John Bryant and Mitzi Baca pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964. Ms. Bowen's Complaint alleges unlawful racial discrimination, unlawful retaliation, constructive discharge, wrongful termination, intentional infliction of emotional distress, negligent supervision, and defamation of character.

On July 23, 2002, Defendants filed the pending motion to dismiss Plaintiff's Title VII and wrongful discharge claims - both of which are based at least partly on the allegation of constructive discharge - for failure to state a claim upon which relief may be granted, FED. R. CIV. P. 12(b)(6). Defendants also seek dismissal of Plaintiff's tort claims on Rule 12(b)(6) grounds, as well as for lack of jurisdiction, FED. R. CIV. P. 12(b)(1), due to Defendants' immunity under New Mexico's Tort Claims Act, §§ 41-4-1 to -27 NMSA 1978.

The Court begins its analysis of Defendants' motion by noting that Plaintiff has clarified that she did not intend to request any injunctive relief against Defendants.  Thus, Defendants' motion to dismiss the request for permanent injunctive relief is granted as uncontested.

## DISCUSSION

### Rule 12(b)(6) Motion

The Court may dismiss a cause of action under Federal Rule 12(b)(6) for failure to state a claim only if it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief.  *Hartford Fire Ins. Co. v. Cal.*, 509 U.S. 764, 811 (1993) (quotations and citation omitted).  In considering a Rule 12(b)(6) motion, the Court must assume all well-pleaded facts to be true and must draw all reasonable inferences in favor of the plaintiff. *Housing Auth. of the Kaw Tribe v. City of Ponca City,* 952 F.2d 1183, 1187 (10th Cir. 1991). The determinative issue in reviewing the sufficiency of a complaint is not whether the plaintiff will prevail ultimately, but whether the plaintiff is entitled to offer evidence in support of her claim. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

These deferential rules do not allow the Court to assume that a plaintiff "can prove facts that [plaintiff] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc., v. Cal. State Council of Carpenters,* 459 U.S. 519, 526 (1983).  "[G]ranting a motion to dismiss is 'a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'"  *Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins,* 792 F.2d 975, 978 (10th Cir. 1986)).

-4-

*Allegations of constructive discharge*

Defendants argue that Plaintiff has failed to state a sufficient claim for constructive discharge, which is one of the theories underlying her Title VII claim and the sole grounds for her wrongful termination claim.

The Tenth Circuit has held that constructive discharge occurs when an employer "makes or allows the employee's working conditions to become so intolerable that the employee has no other choice but to quit." *Irving v. Dubuque Packing Co.*, 689 F.2d 170, 172 (10th Cir. 1982), *repudiated on other grounds by Koch v. City of Hutchinson*, 814 F.2d 1489, 1495 (10th Cir. 1987). Whether the conditions of employment were so intolerable must be evaluated under an objective standard. The decisionmaker must ask if the "working conditions [were] so difficult that a reasonable person in the employee's position would [have felt] compelled to resign." *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 534 (10th Cir. 1998) (quotations and citation omitted). "The question is not whether working conditions ... were difficult or unpleasant," but whether the plaintiff, "at the time of [her] resignation[], had the opportunity to make a free choice regarding [her] employment relationship." *Yearous v. Niobrara County Mem'l Hosp.*, 128 F.3d 1351, 1357 (10th Cir. 1997). The "plaintiff's subjective views of the situation are irrelevant." *Sanchez,* 164 F.3d at 534 (quotations and citations omitted).

For purposes of a Title VII claim, a plaintiff must allege that her resignation was due to objectively intolerable work conditions created by defendants' discriminatory actions. *See, e.g., Bolden v. PRC, Inc.,* 43 F.3d 545, 550-51 (10th Cir. 1994). If a plaintiff only can establish that she was effectively forced to leave her position because of the defendants' nondiscriminatory

conduct, she may prevail on a claim for wrongful termination, but cannot do so on a claim brought under Title VII.

Plaintiff's Title VII claim of constructive discharge rests on the following allegations: racially disparate compensation to employees, the retaliatory removal of Plaintiff's name from the rehire list after she filed an EEOC complaint, and the ultimate elimination of her position as Technology Coordinator.  Prior cases have indicated that, standing alone, neither failure to promote nor unequal pay amount to a constructive discharge.  *Irving v. Dubuque Packing Co.,* 689 F.2d 170, 172 (10th Cir. 1982).  Noting that various cases have held that even "a combination of some of these factors does not constitute constructive discharge," *id.* at 172, the Tenth Circuit has concluded that "a finding that [a plaintiff] was constructively discharged must be justified by the existence of certain aggravating factors," *id.* at 173 (quotations and citation omitted).

According to Plaintiff's Complaint, Defendants' discriminatory actions took the form of a racially differentiated pay scale and removal of Plaintiff's name from a list of recommended rehires after she had filed an EEOC complaint.  Plaintiff has alleged further that she was denied opportunities for advancement and promotion provided to other employees and that Defendant Baca accused her of professional impropriety.  The Court finds that Plaintiff has alleged sufficient facts to support a cognizable claim for constructive discharge in violation of Title VII.  This is not a case where it is apparent, beyond doubt, that Plaintiff can prove no facts that would entitle her to relief.  Plaintiff has alleged that Defendants engaged in racially discriminatory conduct, that additional aggravating circumstances existed that made her work environment intolerable, and that Defendants ultimately eliminated her position.  Accordingly, Defendants' motion to dismiss

Plaintiff's Title VII and wrongful termination claims, insofar as they are based on allegations of constructive discharge, will be denied.

### *Request for Punitive Damages*

Defendants also seek dismissal of Plaintiff's request for punitive damages. Title VII does not allow for recovery of punitive damages where the defendants are the "government, [a] government agency or political subdivision." 42 U.S.C. § 1981a(b)(1). Similarly, plaintiffs may not be awarded punitive damages in § 1983 suits brought against municipal agencies. *Dill v. City of Edmond, Okla.*, 155 F.3d 1193, 1210 (10th Cir. 1998). However, a government official may be sued under § 1983 in her individual capacity, in which case punitive damages may be recovered from the official's personal finances if the plaintiff can prove that "the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). In such a personal-capacity suit, punitive damages are warranted "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983) (cited in *Wulf v. City of Wichita*, 883 F.2d 842, 867 (10th Cir. 1989)).

Plaintiff has specified nowhere whether she is suing Defendants John Bryant and Mitzi Baca in their official or their individual capacities. In the Tenth Circuit, "where the complaint fails to specify the capacity in which the government official is sued, we look to the substance of the pleadings and the course of the proceedings in order to determine whether the suit is for individual or official liability." *Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993). Because of the early stage of the proceedings at this point and the fact that Plaintiff has sought punitive damages against Defendants, the Court will read the Complaint as a suit seeking to impose both

-7-

official and personal liability.  As such, Plaintiff is entitled to punitive damages on her § 1983

claim against the individual Defendants if it is ultimately shown that their conduct was undertaken

with the requisite intent.

**Rule 12(b)(1) Motion**

Federal courts are courts of limited jurisdiction and may only exercise jurisdiction when

specifically authorized to do so.  *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994).  A

motion to dismiss based on sovereign immunity is treated as a motion to dismiss for lack of

subject matter jurisdiction pursuant to Rule 12(b)(1).

Defendants seek dismissal of Plaintiff's tort claims -  intentional infliction of emotional

distress, negligent supervision and defamation - on the grounds of sovereign immunity.  The New

Mexico Tort Claims Act (NMTCA) grants state entities immunity against tort liability, unless a

plaintiff's tort claims fall within one of the law's specifically enumerated exceptions.  N.M. STAT.

ANN. §§ 41-4-4 to -13 (Michie 1996 & Supp. 2003).  Plaintiff's claims of intentional infliction of

emotional distress, negligent supervision and defamation by the Grants/Cibola County Schools,

the School Board, and Board members John Bryant and Mitzi Baca do not come under any of

these exceptions.

Plaintiff attempts to salvage these claims by relying on the state's Human Rights Act, §§

28-1-1 to -15 NMSA 1978 (repealed effective July 1, 2006), even though the Human Rights Act

is nowhere cited in the Complaint as grounds for Plaintiff's claims.  The New Mexico Supreme

Court has held that "sovereign immunity has been waived by the Human Rights Act to the extent

needed to permit recovery under the Act against the state," *Luboyeski v. Hill*, 872 P.2d 353, 357-

58 (N.M. 1994).  Looking to Plaintiff's Complaint, however, the Court finds that the allegations

do not support a claim for relief under the Human Rights Act: Plaintiff has nowhere alleged facts indicating that she went through the administrative process that is a mandatory prerequisite to suing defendants under the Act. *See id*. 355-56. Thus, as Plaintiff's tort claims do not fall under any of the waivers of immunity specifically enumerated in the New Mexico Tort Claims Act and do not demonstrate compliance with the procedural requirements of the Human Rights Act, the Court lacks subject matter jurisdiction to hear the claims due to Defendants' sovereign immunity.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss **[Doc. No. 11]** Plaintiff's Complaint and Memorandum in support thereof **[Doc. No. 12]** is **DENIED** to the extent Defendants seek dismissal of Plaintiff's claims of constructive discharge; **DENIED** as to Plaintiff's request for punitive damages; and **GRANTED** as to Plaintiff's claims of intentional infliction of emotional distress, negligent supervision and defamation.

Dated this 30th day of September, 2003.

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:
Timothy L. White

Attorney for Defendants:
Frank J. Albetta