IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JUDY BOWEN,

        Plaintiff,

vs.                                                                          No. CIV 02-566 MV/LAM

GRANTS/CIBOLA COUNTY SCHOOLS,
GRANTS/CIBOLA COUNTY SCHOOL
BOARD, JOHN BRYANT and MITZI
BACA,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment, filed October 15, 2004, **[Doc. No. 63]**. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion is well-taken and will be **GRANTED**.

### BACKGROUND

Plaintiff Judy Bowen was employed as Technology Coordinator for Grants/Cibola County Schools from October 1999 through March 2002. As Technology Coordinator, Plaintiff was responsible for procuring office equipment and computer services by receiving and awarding bids from contractors. Plaintiff's immediate supervisor was the superintendent of the school district.

At the time of Plaintiff's employment, the Grants/Cibola County School Board ("School Board") had the authority to set salaries and budgets for the School District and its employees. For the 2000-2001 school year, however, Superintendent Linda Coy set administrators' salaries

without the understanding and approval of the School Board. The salaries set by Superintendent Coy included a 10% pay increase for Plaintiff.

Plaintiff's job performance evaluation for the 2000-2001 school year indicated that Plaintiff's communication skills were "Below Required." School District employees who did not meet expectations were routinely placed on Professional Development Plans ("PDP") designed to help employees develop the requisite skills to obtain a successful rating on a required skill. In accordance with this policy, Superintendent Coy placed Plaintiff on a PDP to improve her communication skills.[1]

In May 2001, Plaintiff received a letter of intent to rehire her for the 2001-2002 academic year, even though the School Board had not then approved the contract or pay schedule. The School Board subsequently created a salary committee to propose a new salary schedule for school administrators and froze all administrators' salaries pending development of the new salary schedule. Ultimately, the School Board was not satisfied with the salary schedule proposed by the salary committee and, in a closed executive session on September 18, 2001, the School Board set each administrator's salary. In setting an administrator's salary, the School Board considered the amount of the previous year's raise, administrative experience, job performance and job duties. The School Board determined that Plaintiff's 10% pay increase the previous year was excessive, that she did not have the administrative experience for a higher salary, and that her job performance for the 2000-2001 school year was insufficient to warrant a raise in salary. As a

---

[1] Superintendent Coy stated in her deposition that every employee in the District has a three-year PDP to facilitate professional development. The PDP prepared for Plaintiff, however, was a short-term remedial PDP to address deficiencies in her communication skills and was not a three-year PDP to encourage general professional development.

result of these factors, the School Board did not give Plaintiff a raise for the 2001-2002 school year.  According to Plaintiff, when she asked the School Board why her salary remained the same, she was given no explanation.

Overall, the School Board authorized a pay schedule under which Plaintiff, who is white, and three other administrative employees, two of whom are white and one of whom is Hispanic, did not receive a pay raise and three administrative employees, two of whom are white and one of whom is Hispanic, were given a pay raise.  On February 12, 2002, Ms. Bowen filed a complaint with the EEOC alleging that she had been denied a pay increase because of her race and sex.

On March 6, 2002, Acting Superintendent John Bryant ("Defendant Bryant") evaluated Plaintiff's performance for the 2001-2002 school year.  Although the format of the evaluation was different, Defendant Bryant's evaluation of Plaintiff's performance closely mirrored Superintendent Coy's evaluation for the previous year, indicating that Plaintiff's communication skills were "Below Required."  Defendant Bryant asserts that he told Plaintiff during her evaluation that he would support her for rehire if she successfully completed a PDP designed to improve her communication skills.  This statement is supported by Defendant Bryant's first draft of Plaintiff's evaluation, which states "support for rehire, but will need a [PDP]."  The copy of the evaluation signed by Plaintiff, however, does not reference the need for a PDP and Plaintiff denies that Defendant Bryant told her that she needed to complete a PDP before he would recommend her for rehire.

At some point, Plaintiff began seeking new employment.  On February 8, 2002, Plaintiff traveled to California to seek employment with the Compton Unified School District.  Plaintiff returned to California for a second job interview at the Compton Unified School District on

March 15, 2002. At this interview, the Compton Unified School District made an offer of employment to Plaintiff, which she accepted, either that day or later by phone.[2]

On March 19, 2002, the School Board held a meeting to review and approve contracts for the upcoming academic year. Under the procedures in place at that time, the superintendent recommended personnel for rehire but the School Board ultimately determined who would be rehired. In preparation for this meeting, the School District's Assistant Superintendent of Personnel compiled a list of current employees for review by Defendant Bryant. Prior to Defendant Bryant's review, however, this list was attached to the School Board meeting agenda and distributed to school administrators, including Plaintiff, as the list of Defendant Bryant's recommended rehires. Prior to the School Board meeting, Defendant Bryant noticed that Plaintiff's name had been included on the list of his recommended rehires and had a member of his staff remove Plaintiff's name. Defendant Bryant contends that he removed Plaintiff's name because he did not want to present Plaintiff to the School Board as a recommended rehire until she had completed the PDP he was in the process of drafting. A new recommended rehire list that did not contain Plaintiff's name was distributed to the School Board immediately before the School Board meeting. As a result, Plaintiff's name was not presented to the School Board for its consideration at the March 19, 2002 meeting and the School Board took no action as to Plaintiff's employment contract.

---

[2] Although Plaintiff stated in her deposition testimony that she was offered employment during the March 15th interview and that she cannot remember whether she accepted the position at the interview or later by phone, she now asserts that she did not formally accept the job offer until the first day of her employment on April 15, 2002. The Court finds Plaintiff's position not credible. A reasonable juror could not find that Plaintiff did not formally accept a job offer until the day she began work, when accepting the new position required her to quit her current job and move from New Mexico to California.

According to Plaintiff, when she asked why her name had been removed, Defendant Bryant told her that during an executive session the School Board decided to remove her name from the list. Plaintiff asserts that no School Board executive session occurred prior to the revision of the list. Defendant Bryant denies that he told Plaintiff that he had removed her name at the direction of the School Board and confirms that there was no executive session of the School Board between the time the original list was prepared and when he removed Plaintiff's name from the list.

Plaintiff further alleges that in March 2002, Defendant Bryant requested that another teacher participate in a review on technology in the District without her knowledge or input, even though this was a task typically done by Plaintiff as Technology Coordinator. Plaintiff also alleges that her position as Technology Coordinator was eliminated.

Plaintiff did not complain to Defendant Bryant that the removal of her name was retaliatory, did not attempt to have this issue addressed through internal mechanisms even though she acknowledges that she was aware of the existence of internal processes to address such complaints, and did not file an EEOC complaint regarding the alleged retaliation. Instead, on or about March 26, 2002, Plaintiff submitted a letter of resignation to Defendant Bryant, asserting that she was forced to resign, in part, because she had not received a raise for the 2001-2002 school year, because her name had been removed from the recommended rehire list for the 2002-2003 academic year, and because her position as Technology Coordinator had been eliminated. On April 15, 2002, Plaintiff began work at her new job with the Compton Unified School District.

On May 20, 2002, Plaintiff brought the instant lawsuit against the Grants/Cibola County School Board, John Bryant and Mitzi Baca pursuant to 42 U.S.C. § 1983, Title VII of the Civil

Rights Act of 1964, and state law. Plaintiff's Complaint alleges unlawful racial discrimination, unlawful retaliation, constructive discharge, wrongful termination, intentional infliction of emotional distress, negligent supervision, and defamation of character. The Court previously dismissed Plaintiff's claims of intentional infliction of emotional distress, negligent supervision and defamation. Defendants now move for summary judgment on Plaintiff's remaining claims.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). There is no requirement that the moving party negate the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted). Rather than "merely show there is

some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson*, 477 U.S. at 248. Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus*, 985 F. Supp at 1281.

## DISCUSSION

A.   Title VII Reverse Discrimination Claim

Plaintiff, who is white, asserts that she was discriminated against on the basis of her race when she did not receive a raise for the 2001-2002 school year. In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court established a three-part paradigm for evaluating Title VII disparate treatment claims. First, the plaintiff must establish a *prima facie* case of discrimination. Second, if the plaintiff carries her initial burden, the burden shifts to the defendant to "articulate some legitimate nondiscriminatory reason" for the challenged workplace decision. Third, if the defendant carries this burden, the plaintiff has an opportunity to prove that the legitimate reasons the defendant offered were merely a pretext for discrimination. *Id.* at 802.

The first step in establishing a *prima facie* case of racial discrimination under *McDonnell Douglas* is to demonstrate that plaintiff belongs to a racial minority. A Title VII disparate treatment plaintiff who pursues a reverse discrimination claim, and seeks to obtain the benefit of

the *McDonnell Dougla*s presumption, must, in lieu of showing that he belongs to a protected group, "establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Notari v. Denver Water Dep't.*, 971 F.2d 585, 589  (10th Cir. 1992).  Plaintiff has not argued, much less provided any evidence, that the School District is one of the unusual employers who discriminates against the majority and, therefore, may not rely upon the *McDonnell Douglas* formulation to state her *prima facie* case.

    Plaintiff's failure to demonstrate entitlement to the *McDonnell Douglas* presumption does not foreclose her opportunity to prove that she was a victim of intentional discrimination.  *Id.* The Tenth Circuit, recognizing that just because a reverse discrimination claimant cannot show the background circumstances necessary to trigger the *McDonnell Douglas* presumption does not inexorably mean that her employer has not intentionally discriminated against her, has established an alternative basis upon which a plaintiff may satisfy her *prima facie* burden.  Under this alternative basis, a plaintiff who presents direct evidence of discrimination, or indirect evidence sufficient to support a reasonable probability, that but for the plaintiff's status the challenged employment decision would have favored the plaintiff states a *prima facie* case of intentional discrimination under Title VII.  A plaintiff who attempts to state a *prima facie* case in this fashion, however, is not entitled to rely on the presumption that is implicit in the *McDonnell Douglas prima facie* case analysis.  *Id.* at 590 ("In other words, it is not enough, under this alternative formulation, for a plaintiff merely to allege that he was qualified and that someone with different characteristics was the beneficiary of the challenged employment decision.  Instead, the plaintiff must allege and produce evidence to support specific facts that are sufficient to support a

-8-

reasonable inference that but for plaintiff's status the challenged decision would not have occurred.").

The Court finds that Plaintiff also has failed to establish a *prima facie* case under the Tenth Circuit's alternative formulation. Plaintiff's response does not address her retaliation claim. The evidence before the Court is that the School Board authorized a pay schedule under which Plaintiff, who is white, and three other administrative employees, two of whom are white and one of whom is Hispanic, did not receive a pay raise and three administrative employees, two of whom are white and one of whom is Hispanic, were given a pay raise. At the time, Plaintiff was not given any explanation for the School Board's decision not to give her a raise. These facts are insufficient to support a reasonable inference that but for Plaintiff's race, she would have received a raise. Furthermore, Plaintiff does not dispute Defendants' assertion that she was not entitled to a raise for the 2001-2002 school year. *See* Defendants' Material Fact Number 18 ("Plaintiff and other administrators who did not receive a raise in 2001 were not entitled to a raise.") and Plaintiff's Response (not disputing Defendants' Material Fact Number 18). Plaintiff has failed to establish a *prima facie* case of discrimination and summary judgment will be granted in favor of Defendants on this claim.

B.   Retaliation

Next, Plaintiff alleges that in retaliation for filing her EEOC complaint, Defendant Bryant, possibly at the behest of one or more members of the School Board, removed Plaintiff's name from the March 19, 2002 list of administrative personnel he was presenting to the School Board as recommended rehires. Plaintiff asserts, without any support, that written School Board policies provide that a class of employees can only go before the School Board for consideration

for rehire at a specified time and, if an employee is not brought before the School Board with his or her class at the specified time, the employee may not be brought before the School Board for rehire. Thus, according to Plaintiff, Defendant Bryant's decision not to include her name on the list of administrative employees presented to the School Board on March 19, 2002, was the functional equivalent of terminating her at that time. Although it is not clear from the record, Plaintiff also appears to claim that Defendant Bryant's decision not to include her in the March 2002 audit of the Technology Department and the elimination of her position were also retaliatory acts.

Under Title VII, it is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061 (2002), the Supreme Court held that each discrete incident of retaliatory treatment constitutes its own "unlawful employment practice" for which administrative remedies must be exhausted. *Id.* at 110-13, 122 S.Ct. 2061; *see also Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003) (Title VII plaintiff must "exhaust administrative remedies for each individual discriminatory or retaliatory act."). Because there is no evidence in the record that Plaintiff filed an EEOC charge detailing the retaliatory acts purportedly committed by Defendants, her retaliation claim must be dismissed.

    C.    Constructive Discharge Claim

Plaintiff asserts that as a result of Defendants' actions, she was constructively discharged from her position. The Tenth Circuit has held that constructive discharge occurs when an employer "makes or allows the employee's working conditions to become so intolerable that the employee has no other choice but to quit." *Irving v. Dubuque Packing Co.*, 689 F.2d 170, 172 (10th Cir. 1982), *repudiated on other grounds by Koch v. City of Hutchinson*, 814 F.2d 1489, 1495 (10th Cir. 1987). Whether the conditions of employment were so intolerable must be evaluated under an objective standard. The decisionmaker must ask if the "working conditions [were] so difficult that a reasonable person in the employee's position would [have felt] compelled to resign." *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 534 (10th Cir. 1998) (quotations and citation omitted). "The question is not whether working conditions ... were difficult or unpleasant," but whether the plaintiff, "at the time of [her] resignation[], had the opportunity to make a free choice regarding [her] employment relationship." *Yearous v. Niobrara County Mem'l Hosp.*, 128 F.3d 1351, 1357 (10th Cir. 1997). The "plaintiff's subjective views of the situation are irrelevant." *Sanchez,* 164 F.3d at 534 (quotations and citations omitted).

For purposes of a Title VII claim, a plaintiff must allege that her resignation was due to objectively intolerable work conditions created by defendant's discriminatory actions. *See, e.g., Bolden v. PRC, Inc.,* 43 F.3d 545, 550-51 (10th Cir. 1994) (plaintiff's constructive discharge claim failed because he did not show how his resignation was the result of illegal discriminatory conduct); *Acrey v. American Sheep Indus. Ass'n*, 981 F.2d 1569, 1573-74 (10th Cir. 1992) (standard for constructive discharge is whether the employer's illegal discriminatory acts fostered a climate in the workplace that would compel a reasonable person to resign). If a plaintiff's allegations do not constitute violations of Title VII,  the Court cannot conclude that she

-11-

involuntarily resigned to escape intolerable and illegal work conditions. *See Sanchez*, 164 F.3d at 534 (employee was not constructively discharged when work environment, while unpleasant, was not an adverse employment action). As discussed above, Plaintiff has failed to prove her claims of racial discrimination and retaliation and thus has not established the underlying illegality necessary to support a constructive discharge claim.

    D.    State Law Wrongful Termination Claim

Plaintiff does not contest summary judgment on her state law wrongful termination claim and summary judgment will be granted in favor of Defendants on this claim.

    E.    Damages and Defenses

Due to the Court's determination that Plaintiff has failed to establish her Title VII and state law claims, the Court need not address Defendants' remaining arguments on damages, affirmative defenses, and immunity.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment, filed October 15, 2004, **[Doc. No. 63]**, is **GRANTED**. Judgment will be entered in favor of Defendants on Plaintiff's Title VII discrimination, retaliation, and constructive discharge claims and on Plaintiff's wrongful termination claim.

Dated this 24th day of February, 2005.

                                    _____
                                    MARTHA VAZQUEZ
                                    CHIEF UNITED STATES DISTRICT JUDGE

<u>Attorney for Plaintiff</u>:

Timothy L. White

<u>Attorney for Defendants</u>:
Frank J. Albetta